James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SCOTT FRIEDMAN, | Case No. 2:18-CV-857 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| UNITED STATES OF AMERICA, et al., | |
| Defendant(s). | |

Presently before the court is defendant United States of America's ("United States") motion to dismiss. (ECF No. 39). Plaintiff Scott Friedman filed a response (ECF No. 82), to which the United States replied (ECF No. 87).

Also before the court is defendants Tali Arik and Arik Ventures, LLC's ("Arik Ventures") motion to dismiss. (ECF No. 54). Friedman filed a response (ECF No. 69), to which Arik and Arik Ventures replied (ECF No. 73).

Also before the court is defendants Thayne Larson, Gene Tierney, and Matthew Zito's (the "FBI agents") motion to dismiss. (ECF No. 55). Friedman filed a response (ECF No. 82), to which the FBI agents replied (ECF No. 88).

Also before the court is defendant Julie Bolton's motion to dismiss. (ECF No. 56). Friedman filed a response (ECF No. 107), to which Bolton replied (ECF No. 114).

Also before the court is defendants Larson, Tierney, Zito, Arik, Arik Ventures, Bolton, the United States, Jason Hahn, Darren Heiner, Joe LePore, and the Las Vegas Metropolitan Police Department's ("LVMPD") (collectively "defendants") objection to Magistrate Judge Cam Ferenbach's order. (ECF Nos. 94, 95, 96, 97, 98, 99). Friedman filed a response. (ECF No. 106).

**I. Facts**

Plaintiff Friedman filed this action against the defendants on May 11, 2018. The complaint (ECF No. 1) is 95 pages long and references an additional 435-plus pages of exhibits identified and filed as exhibits A-X. (ECF Nos. 2, 3, 17–24). The complaint names eleven defendants including the United States, three FBI agents (agents Tierney, Zito, and Larson), three LVMPD officers (officers LePore, Heiner, and Hahn), LVMPD, two individuals (Tali Arik and Julie Bolton), and Arik Ventures. *See id*.

This litigation arises from a federal criminal prosecution against Freidman (and two co-defendants). *Id*. On September 2, 2014, a federal grand jury indicted Friedman on federal wire charges. (ECF Nos. 1, 39). Shortly before trial, the LVMPD informed the federal prosecutors of a written statement (the "2010 written statement") that the prosecution's chief witness, Arik, wrote. (ECF No. 39). The 2010 written statement prompted a re-assessment of the viability of the government's case against Friedman, which ultimately resulted in dismissal of all charges. (ECF Nos. 1, 39).

Friedman alleges that defendants engaged in various unlawful activities before and during Friedman's criminal case. (ECF No. 1). The complaint includes the following allegations:

Friedman was a LVMPD police officer for fifteen years and retired in August 2012. *Id*. During his employment with the LVMPD, Friedman also had a real estate business where he would buy and sell, renovate, and rent homes in the Las Vegas area. *Id*. In 2004, Friedman became acquainted with Arik, who is a cardiovascular surgeon in Las Vegas. *Id*. Friedman and Arik subsequently formed a business relationship focusing on the purchase of property in Las Vegas. *Id*.

In mid-2009, Friedman became concerned about Arik's ability to pay money that Friedman previously loaned to Arik in furtherance of their joint venture. *Id*. Friedman organized a meeting with Arik to discuss his concerns, in which Arik told Friedman that he owed money to another person, Michael Panik, and that his debt to Panik took priority over his other debt obligations. *Id*. Arik insisted that he would be amendable to repaying Friedman if Friedman facilitated the payments to Panik. *Id*. Friedman eventually agreed to transmit funds from Arik to Panik. *Id*.

Thereafter, Arik repaid Friedman. *Id*. However, Friedman's efforts to resolve his concerns regarding his loan caused Arik to become angry and resentful towards Friedman. *Id*.

In early 2010, Arik prepared the 2010 written statement containing false allegations regarding a fraud scheme in which he was a victim. *Id*. The fraud scheme that Arik described centered on a real estate venture called the "Back Canyon Estates" project in California. *Id*. The 2010 written statement implicated Friedman in the fraud scheme. *Id*. Thereafter, Arik met with FBI agent Tierney and provided the 2010 written statement to support his effort to solicit a criminal investigation of Friedman's activities. *Id*. The U.S. Attorney's office subsequently informed Arik that it had declined to take any action. *Id*.

In mid-2011, Arik initiated a state-court civil lawsuit to recover financial losses that he incurred as a result of the Black Canyon Estates real estate venture. *Id*. The lawsuit named multiple defendants including the LVMPD and Friedman. *Id*. As a result of the lawsuit, the LVMPD investigated Friedman and, eventually, forced him to take an early retirement. *Id*.

Thereafter, in 2011 and early 2012, Arik and his long-time girlfriend, Bolton, made various representations to the U.S. Attorney's office and the LVMPD to induce a criminal prosecution against Friedman. *Id*. In June 2012, the FBI opened an investigation into Arik's allegations of fraud against Friedman. *Id*.

FBI Agents Tierney, Zito, and Larson conducted the investigation despite possessing the 2010 written statement by Arik, which was exculpatory as to Friedman's guilt. *Id*. The government eventually brought criminal charges against Friedman and two co-defendants. *Id*. Shortly before trial, the government informed Friedman's counsel that the LVMPD had found a previously undisclosed "box of materials" which prompted the government to move to dismiss the criminal prosecution. *Id*. The government claimed that it did not possess the 2010 written statement until it retrieved the box of materials. *Id*.

On May 11, 2018, Friedman initiated this lawsuit. *Id*. The complaint asserts multiple causes of action, which Friedman organized in the following manner: (1) Federal Tort Claims Act ("FTCA") claims against the United States for malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, and negligence; (2) violation of the

James C. Mahan
U.S. District Judge

- 3 -

Fourth and Fifth Amendments against the FBI agents; (3) civil conspiracy against Arik and the FBI agents; (4) malicious prosecution against LePore, Heiner, and Hahn; (5) civil conspiracy against Arik, the FBI agents, Lepore, Heiner, and Hahn; (6) malicious prosecution against Arik and Bolton; (7) champerty and maintenance against Arik and Bolton; (8) defamation against Arik; (9) slander against Arik and Bolton; (10) false imprisonment against the FBI agents, LePore, Heiner, and Hahn; (11) civil conspiracy against Arik, Bolton, the FBI agents, LePore, Heiner, and Han; (12) intentional infliction of emotional distress against all defendants; (13) aiding and abetting against all defendants; (14) alter ego against Arik Ventures. (ECF No. 1).

In July and August 2018, the defendants' filed various motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 39, 54, 55, 56). These motions are currently pending before the court.

On August 21, 2018, the FBI agents filed a motion to stay discovery until the court resolves their motion to dismiss (ECF No. 55). (ECF No. 58). On October 4, 2018, Magistrate Judge Ferenbach filed an order that stayed discovery for claims solely related to the FBI agents and further held that the FBI agents will be treated as third-party witnesses until the court resolves their motion to dismiss. (ECF No. 93). The defendants now object to the magistrate judge's order. (ECF Nos. 94, 95, 96, 97, 98, 99).

**II.    Legal Standard**

*a.  Failure to state a claim*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

b. *Objection to a magistrate judge order*

Under Federal Rule of Civil Procedure 72(a), aggrieved parties may file objections to the rulings of a magistrate judge in non-dispositive matters. Fed. R. Civ. P. 72(a). For a party to prevail on an objection pursuant to Rule 72(a) the movant must show that "the magistrate judge's order is clearly erroneous or contrary to law." LR IB 3–1(a); 28 U.S.C. § 636(b)(1)(A). Under this standard, courts review factual determinations for clear error and legal conclusions *de novo*.

*United States v. McConney*, 728 F.2d 1195, 1200–1201 (9th Cir. 1984) (overruled on other grounds by *Estate of Merchant v. CIR*, 947 F.2d 1390 (9th Cir. 1991)

### III. Discussion

Before the court are five motions. First, the court will grant in part and deny in part the United States' motion to dismiss (ECF No. 39). Second, the court will grant the FBI agents' motion to dismiss (ECF No. 55). Third, the court will grant in part and deny in part Arik and Arik Ventures' motion to dismiss (ECF No. 54). Fourth, the court will grant in part and deny in part Bolton's motion to dismiss (ECF No. 56). Lastly, the court will deny as moot the defendants' objection to the magistrate judge's order (ECF No. 94).

*a. United States' motion to dismiss*

The United States moves to dismiss all claims against the United States and all civil tort claims (malicious prosecution, false imprisonment, civil conspiracy, intentional infliction of emotional distress, and aiding and abetting) against the FBI agents. (ECF No. 39).

*i. Claims against the United States*

Friedman asserts six tort claims against the United States pursuant to the FTCA: malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, civil conspiracy, negligence, and aiding and abetting. (ECF No. 1). The court hereby addresses each in turn.

*1. Malicious prosecution*

To state a claim for malicious prosecution, a plaintiff must allege (1) that the defendant lacked probable cause to initiate the prosecution, (2) malice, (3) the prior criminal proceedings were terminated in his favor, and (4) he suffered damages. *LaMantia v. Redisi*, 38 P.3d 877, 888 (Nev. 2002) (citation omitted).

In light of the grand jury indictment, the government had probable cause to initiate the criminal prosecution against Friedman for federal wire fraud. *See Kaley v. United States*, 571 U.S. 320, 338 (2014) (discussing a grand jury's finding of probable cause). Friedman argues that the court should disregard the grand jury indictment because the government failed to present exculpatory evidence. (ECF No. 82). However, the prosecution does not have an obligation to

present exculpatory evidence during a grand jury indictment. *Kaley*, 571 U.S. at 338 (citing *United States v. Williams*, 504 U.S 36, 51 (1992).

Friedman also argues that the court should disregard the grand jury indictment because the government presented false evidence. (ECF No. 82). The court recognizes that the government eventually moved to dismiss the case. However, the complaint is void of any substantive allegation that the government knew that it was presenting false or tainted evidence. *See* (ECF No. 1.).

Accordingly, Friedman has failed to state a claim for malicious prosecution against the United States. *See Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009) ("[P]robable cause is an absolute defense to malicious prosecution.")

### 2. *Abuse of process*

To state a claim for abuse of process, a plaintiff must allege "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia,* 38 P.3d at 879 (quotes omitted).

Friedman alleges that the government initiated the criminal prosecution to convict Friedman for wire fraud. (ECF No. 1). Because a criminal conviction is the authorized purpose of a criminal prosecution, Friedman has failed to state a claim for abuse of process. *See Prosser on Torts*, Abuse of Process § 115, p. 877 (3rd ed. 1964) (There is "no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.").

### 3. *False imprisonment*

Under Nevada law, false imprisonment is the "unlawful violation of the personal liberty of another, and consists in confinement or detention without sufficient legal authority." Nev. Rev. Stat. § 200.460. To state a claim for false imprisonment, a plaintiff must allege that "the plaintiff was restrained of his or her liberty under probable imminence of force without any legal cause or justification." *Garton v. City of Reno*, 720 P.2d 1227, 1228 (Nev. 1986) (brackets omitted).

Friedman argues that the government did not have adequate legal cause or justification to support his imprisonment because the government procured a grand jury indictment with false evidence. (ECF No. 82). However, the court will not disregard the grand jury indictment because,

as the court has already stated, the complaint does not allege any defect in the grand jury indictment process. Accordingly, Friedman has failed to allege that the government did not have adequate justification to support Friedman's arrest and imprisonment.

An arrest or imprisonment pursuant to a valid legal process is generally not actionable under false imprisonment. *Nelson v. Cty. of Las Vegas*, 655 P.2d 1141, 1143–44 (Nev. 1983). However, imprisonment following a valid arrest becomes actionable when an officer "fails to take the arrested person before a court or magistrate within a reasonable time or without unnecessary delay." *Id*. at 1144–45. Here, the complaint does not contain any allegations regarding an undue delay in bringing Friedman before a court or magistrate judge. *See* (ECF No. 1).

In light of the foregoing, Friedman has failed to allege a claim for false imprisonment.

*4. Intentional infliction of emotional distress*

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant either intended or recklessly disregarded the causing of emotional distress; (3) that the plaintiff actually suffered severe or extreme emotional distress; and (4) that the defendant's conduct actually or proximately caused the distress. *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

The complaint does not contain any allegations regarding Friedman's emotional distress other than stating that he suffered "[p]hysical pain and suffering and extreme emotional trauma, suffering, and distress requiring the expenditure of money for treatment of the emotional distress." (ECF No. 1). Such conclusory remarks are insufficient to support a plausible claim for intentional infliction of emotional distress. *Iqbal*, 556 U.S. 662, 678; *see also Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) (holding that a plaintiff must demonstrate that he or she suffered some physical manifestation of emotional distress). Accordingly, the court will dismiss without prejudice Friedman's claim for intentional infliction of emotional distress against the United States.

**James C. Mahan**
**U.S. District Judge**

- 8 -

### 5. *Civil conspiracy*

To state a claim for civil conspiracy a plaintiff must allege that (1) two or more defendants acted in concert with the intent to accomplish an unlawful objective for the purpose of harming another, and (2) damage resulted from the concerted acts. *GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001); *see also Steele v. EMC Mortg. Corp.*, No. 59490, 2013 WL 5423081, at *1 (Nev. Sept. 20, 2013).

Friedman argues that he has properly pleaded a claim for civil conspiracy because he has properly pleaded malicious prosecution and false imprisonment as the underlying torts. (ECF No. 82). However, as the court discussed above, Friedman has not alleged plausible claims for malicious prosecution and false imprisonment against the United States. Accordingly, Friedman has failed to state a claim for civil conspiracy. *See Jordan v. State ex rel Dept't of Motor Vehicles*, 110 P.3d 30, 51 (Nev. 2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. La Vegas*, 181 P3d 670 (Nev. 2008).

### 6. *Negligence*

The FTCA provides a discretionary function exception to liability. *See* 28 U.S.C. § 2680(a). Courts apply a two-step standard for applying the exception: the first inquiry is whether the challenged action involved an element of choice or judgment. *Berkovitz v. United States*, 486 U.S. 531, 536, (1988). If choice or judgment is exercised, the second inquiry is whether that choice or judgment is of the type Congress intended to exclude from liability. *Id*.

Friedman alleges that the United States engaged in the negligent selection and supervision of agents and informants. (ECF No. 1). The Ninth Circuit has held that "decisions relating to hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield." *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (applying the discretionary function exception to Immigration and Naturalization Service's negligent training and supervision of Mr. Kendalla regarding his use of firearms). Therefore, the FTCA's discretionary function exception bars Friedman's negligence claim.

*7. Aiding and Abetting*

The United States has not provided grounds to dismiss this cause of action, other than obfuscating it together with civil conspiracy. However, aiding and abetting is a distinct cause of action. *See Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001). Accordingly, the court will not dismiss Friedman's aiding and abetting claim against the United States.

*ii. Claims against the FBI agents*

The United States argues that the FTCA bars the civil tort claims against the FBI agents. (ECF No. 39).

The "FTCA is the exclusive remedy for tort actions against a federal agency, and this is so despite the statutory authority of any agency to sue or to be sued in its own name." *Kennedy v. U.S. Postal Service*, 145 F.3d 1077, 1077 (9th Cir. 1998) (affirming the district court's dismissal of plaintiff's FTCA claim as improperly brought against a person and entity not subject to the FTCA); *see also Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995) ("[T]he United States is the only proper defendant in an FTCA action."). Thus, if a claim is properly against the United States under the FTCA, the individual tortfeasor is immunized from liability. *See Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 743 n.1 (9th Cir. 1991).

Accordingly, because the civil tort claim are properly brought against the United States, the court will dismiss without prejudice Friedman's civil tort claims against the FBI agents.

*iii. Summary*

In light of the foregoing, court will dismiss without prejudice Friedman's claims for malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, civil conspiracy, and negligence against the United States. The court will also dismiss without prejudice all of Friedman's civil tort claims against the FBI agents.

*b. FBI Agents' motion to dismiss*

The court has already addressed all of Friedman's civil tort claims against the FBI agents. The only remaining causes of action against the FBI agents are Friedman's *Bivens* claims for violation of the Fourth Amendment, violation of the Fifth Amendment, and civil conspiracy.

The FBI agents argue that the court should dismiss Friedman's *Bivens* claims because the *Bivens* case does not create an implied private action under the circumstances of this case. (ECF No. 55).

The *Bivens* case was the first time the Supreme Court "recognized . . . an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, (2001) (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 391 (1971)). In doing so, the Supreme Court established that "federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violations of their constitutional rights." *W. Ctr. For Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir.2000) (citations omitted).

In *Bivens*, the Supreme Court recognized that an implied private cause of action arises when law enforcement officials violate a plaintiff's Fourth Amendment right by executing a warrantless search of a plaintiff's home. *Bivens*, 403 U.S. at 391. In the 47 years since *Bivens*, the Supreme Court "ha[s] recognized two more nonstatutory damages remedies, the first for employment discrimination in violation of the Due Process Clause, . . . and the second for an Eighth Amendment violation by prison officials[.]" *Wilkie v. Robbins*, 551 U.S. 537, 549–50 (2007) (internal citations omitted); *see Davis v. Passman*, 442 U.S. 228, 245–48 (1979) (holding that *Bivens* allows gender discrimination claims); *see also Carlson v. Green*, 446 U.S. 14, 17–18 (1980) (holding that *Bivens* allows prisoners to assert Eighth Amendment claims against prison officials).

This action involves the FBI agents' alleged malicious prosecution and false imprisonment of Friedman. (ECF No. 1). As the FBI agents' alleged unlawful activities do not fall within the three types of cases for which the Supreme Court has recognized a *Bivens* claim, the court must determine whether it should extend *Bivens* so as to create a new private right of action for the circumstances of this case.

The Supreme Court has "recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 695 (2004). Thus, the Supreme Court "ha[s] consistently refused

James C. Mahan
U.S. District Judge

to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see also Iqbal*, 556 U.S. at 675 (holding that the Supreme Court disfavors implied causes of action like *Bivens* and therefore limits their availability).

Nevertheless, courts may extend *Bivens* in rare circumstances in order "to provide an otherwise nonexistent cause of action against individual officers alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked any alternative remedy for harms caused by an individual officer's unconstitutional conduct." *Malesko*, 534 U.S. at 70. The decision to recognize a new *Bivens* cause of action is a two-step analysis. First, courts can extend *Bivens* only if there does not exist an alternative remedy. *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012). Second, if an alternative remedy does not exist, courts must consider whether special factors counsel against creating a new *Bivens* claim. *Id*.

Here, the FTCA expressly allows a private plaintiff to assert claims for "false imprisonment, false arrest, malicious prosecution, [and] abuse of process[.]" 28 U.S.C. § 2690(h). As these torts fully encompass the FBI agents' alleged activities, the FTCA provides Friedman with an alternative remedy. Therefore, the court will not extend *Bivens* to the circumstances of this case. *See Schweiker v. Chilicky*, 487 U.S. 412, 421, (1988) (holding that a *Bivens* claim does not exist when government has provided an adequate remedial mechanism for constitutional violations).

In light of the foregoing, the court will dismiss with prejudice Friedman's *Bivens* claims against the FBI agents.

   *c. Arik and Arik Ventures' motion to dismiss*

Friedman asserts seven causes of action against Arik: (1) civil conspiracy pursuant to *Bivens*; (2) a second claim for civil conspiracy; (3) malicious prosecution; (4) champerty and maintenance; (5) defamation (*per se* and slander); (6) intentional infliction of emotional distress; and (7) aiding and abetting. (ECF No. 1). As to Arik Ventures, Friedman asserts a single claim for alter ego. *Id*.

Arik and Arik Ventures move to dismiss all of the claims that Friedman asserts against them. (ECF No. 54). The court hereby addresses each in turn.

**James C. Mahan**
**U.S. District Judge**

- 12 -

### 1. *Civil conspiracy pursuant to Bivens*

In *Bivens*, the Supreme Court established that there exist implied causes of action that private parties can assert against federal officials for constitutional violations. *W. Ctr. For Journalism*, 235 F.3d at 1156 (9th Cir. 2000) (citations omitted); *see also Bivens*, 403 U.S. at 391. Arik is not a federal official. Thus, Friedman cannot assert a *Bivens* claim against him. *See Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982) (holding that a party cannot assert a *Bivens* claim against a defendant that is not a federal officer).

### 2. *Civil conspiracy*

Friedman alleges that Arik engaged in a civil conspiracy to imprison Friedman and to initiate the criminal proceedings. (ECF No. 1). In particular, the complaint contains allegations that Arik and his long-time girlfriend, Bolton, agreed to provide false information to law enforcement officials in order to procure a criminal proceeding against Friedman. *Id*. Because these allegations are sufficient to support a plausible claim for civil conspiracy, the court will allow Friedman to proceed on his civil conspiracy claim against Arik.

### 3. *Malicious prosecution*

Arik and Arik Ventures argue that the court should dismiss the malicious prosecution claim because Arik had probable cause to solicit FBI agents to initiate a criminal prosecution. (ECF No. 54). The court recognizes that the grand jury indictment weighs in favor of finding that Arik had probable cause. *See Kaley v. United States*, 571 U.S. 320, 338 (2014) (discussing a grand jury's finding of probable cause). However, Friedman alleges in detail that Arik knowingly presented false information to the FBI agents in order to prompt the criminal prosecution. (ECF No. 1). In light of these allegations, Friedman has asserted a plausible claim for malicious prosecution.

### 4. *Champerty and maintenance*

Maintenance and champerty are closely related common law doctrines. Maintenance "is officious intermeddling in a suit which in no way belongs to the intermeddler, by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it." 14 AM. JUR. 2d *Champerty, Maintenance, and Barratry* § 1 (2000). Champerty is a species of maintenance "in which the intermeddler makes a bargain with one of the parties to the action to be

compensated out of the proceeds of the action." *Id*. Although some states have abolished claims for champerty and maintenance, Nevada still recognizes these causes of action. *See Schwartz v. Eliades*, 939 P.3d 1034 (Nev. 1997).

Friedman concedes that he maintained an interest in the underlying civil action that Arik initiated in Nevada state court. Accordingly, the court will dismiss without prejudice Friedman's claims for champerty and maintenance.

### 5. *Defamation (per se and slander)*

To state a claim for defamation, a plaintiff must allege "(1) a false and defamatory statement by a defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pegasus v. Reno Newspapers*, 57 P.3d 82, 90 (2002) (brackets, quotes, and citation omitted).

Arik and Arik Ventures argue that the court should dismiss Friedman's claim for defamation because Arik's statements were unprivileged. (ECF No. 54).

Nevada recognizes "the long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged." *Fink v. Oshins*, 49 P.3d 640, 643 (Nev. 2002); *see also Lubin v. Kunin*, 17 P.3d 422, 427 (Nev. 2001) (holding that privileged statements are not defamatory). This privilege precludes liability where a defendant publishes a defamatory statement with knowledge of its falsity. *Fink*, 49 P.3d at 643. Moreover, the scope of absolute privilege is broad as it "applies not only to communications made during actual judicial proceedings, but also to communications preliminary to a proposed judicial proceeding." *Id*. at 644 (quotes and citation omitted).

Here, Arik made the alleged defamatory statements preliminary to or in course of the civil lawsuit and/or the criminal prosecution. (ECF No. 1). Accordingly, the court will dismiss with prejudice Friedman's defamation claim against Arik because his alleged statements were made "during actual judicial proceedings" or "preliminary to a proposed judicial proceeding." *Fink*, 49 P.3d at 643.

. . .

. . .

*6. Intentional infliction of emotional distress*

As discussed above, the complaint does not provide any details regarding Friedman's severe and extreme emotional distress. *See* (ECF No. 1). Because conclusory remarks are insufficient to state a plausible claim, the court will dismiss Friedman's claim for intentional infliction of emotional distress against Arik. *See Iqbal*, 556 U.S. 662, 678; *see also Betsinger v. D.R. Horton, Inc*. 232 P.3d 433, 436 (Nev. 2010) (holding that a plaintiff must demonstrate that he or she suffered some physical manifestation of emotional distress).

*7. Aiding and abetting*

Arik and Arik Ventures argue that the court should dismiss Friedman's claim for aiding and abetting against Arik and Arik Ventures because Friedman has failed to allege details that would allow the court to draw a reasonable inference that Arik and Arik Ventures are liable. (ECF No. 54). Friedman has not responded to Arik and Arik Ventures argument other than obfuscating aiding and abetting with civil conspiracy. *See* (ECF No. 69). Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." Accordingly, the court will dismiss without prejudice Friedman's claim for aiding and abetting against Arik and Arik Ventures.

*8. Alter ego*

Corporations are not liable for the acts of its subsidiaries, except in rare cases. *Lorenz v. Beltio Ltd.*, 963 P.2d 488, 496 (Nev. 1998). However, this general principle does not shield a corporation from liability when its subsidiary is nothing more than an alter ego. *Id*. To pierce the corporate veil under the alter ego doctrine, a plaintiff must show: (1) the corporation is influenced and governed by the stockholder, director, or officer; (2) there is such unity of interest and ownership that the corporation and the stockholder, director, or officer are inseparable from each other; and (3) adherence to the corporate fiction of a separate entity would sanction fraud or promote a manifest injustice. Nev. Rev. Stat. 78.747(2); *Lorenz*, 963 P.2d at 496.

Arik and Arik Ventures argue that the complaint does not allege any details of Arik using Arik Ventures as his alter ego. (ECF No. 54). In his response to Arik and Arik Ventures' motion,

Friedman fails to identify any allegations in support of his alter ego claim. *See* (ECF No. 69). Instead, Friedman claims that the court should allow him to proceed on this cause of action because Arik may later claim that Arik Ventures, as an entity, engaged in the alleged activities that are pertinent to this litigation. *Id*.

To survive a motion to dismiss, a complaint must contain sufficient details to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678 (citation omitted). Friedman's argument, that the court should allow him to proceed on this claim as a precautionary measure, does not provide grounds to supplant the Rule 12(b)(6) standard for motions to dismiss. Accordingly, because the complaint does not contain sufficient details to state a plausible claim, the court will deny without prejudice Friedman's alter ego claim.

### 9. *Summary*

In light of the foregoing, the court will dismiss without prejudice Friedman's claims for intentional infliction of emotional distress, champerty and maintenance, aiding and abetting, and alter ego. The court will also dismiss with prejudice Friedman's claims for civil conspiracy pursuant to *Bivens* and defamation.

### d. *Bolton's motion to dismiss*

Friedman asserts six causes of action against Bolton: (1) malicious prosecution; (2) champerty and maintenance; (3) defamation (slander); (4) civil conspiracy; (5) intentional infliction of emotional distress; and (6) aiding and abetting. (ECF No. 1). Bolton moves to dismiss all six causes of action. (ECF No. 56). The court hereby addresses each in turn.

### 1. *Malicious prosecution*

Malicious prosecution requires that "the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff." *LaMantia*, 38 P.3d at 879–80 (citation omitted).

Friedman alleges that Arik, not Bolton, procured law enforcement officials to initiate criminal charges. (ECF No. 1). The only allegation regarding Bolton's involvement in the criminal prosecution is her interview with the LVMPD officers on January 11, 2012. *Id*. Moreover, Friedman admits that the LVMPD "sought her out" for the January 11, 2012, interview.

U.S. District Judge

- 16 -

(ECF No. 107). Accordingly, the court will dismiss without prejudice Friedman's malicious prosecution claim against Bolton because Friedman has failed to alleged that Bolton "initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding[.]" *LaMantia*, 38 P.3d at 879–80 (citation omitted)..

### 2. *Champerty and maintenance*

Friedman's concedes that the court should dismiss this claim. (ECF No. 107). Accordingly, the court will dismiss without prejudice Friedman's cause of action for champerty and maintenance.

### 3. *Defamation (slander)*

Bolton made the alleged defamatory statements—Bolton's statements during the January 11, 2012, interview with the LVMPD—in advance of a proposed criminal proceeding. (ECF No. 1). Because "communications made . . . preliminary to a proposed judicial proceeding" are subject to absolute privilege, the court will dismiss with prejudice Friedman's claim for defamation against Bolton. *Fink*, 49 P.3d at 644 (quotes and citation omitted).

### 4. *Civil conspiracy*

As discussed above, Friedman argues that Arik and his long-time girlfriend, Bolton, agreed to provide false information to law enforcement officials in order to procure the criminal proceeding. (ECF No. 1). These allegations are sufficient to support a plausible claim for civil conspiracy. Accordingly, the court will allow Friedman to proceed on his civil conspiracy claim against Arik.

### 5. *Intentional infliction of emotional distress*

The complaint does not provide any details regarding Friedman's severe and extreme emotional distress. *See* (ECF No. 1). Because conclusory remarks are insufficient to state a plausible claim, the court will dismiss without prejudice Friedman's intentional infliction of emotional distress claim against Bolton. *See Iqbal*, 556 U.S. 662, 678; *see also Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) (holding that a plaintiff must demonstrate that he or she suffered some physical manifestation of emotional distress).

. . .

James C. Mahan
U.S. District Judge

- 17 -

### 6. Aiding and abetting

To state a claim for aiding and abetting in the civil context, a plaintiff must allege (1) the primary violator breached a duty that injured the plaintiff, (2) the alleged aider and abettor "was aware of its role in promoting [the breach] at the time it provided assistance," and (3) the alleged aider and abettor "knowingly and substantially assisted" the primary violator in committing the breach. *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998*), overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

According to the complaint, Bolton helped Arik in a false schemed to have law enforcement officials press charges against Friedman by making false statements to the LVMPD officers in 2012. (ECF No. 1). The court also takes judicial notice of an FBI official record regarding an interview with Bolton on September 19, 2016. (ECF No. 107-1). In light of the allegations in the complaint and the FBI record, Friedman has stated a plausible claim for aiding and abetting.

### 7. Summary

In light of the foregoing, the court will dismiss without prejudice Friedman's claims for malicious prosecution, champerty and maintenance, and intentional infliction of emotional distress against Bolton. The court will also dismiss with prejudice Friedman's claim for defamation against Bolton.

### e. Defendants' objection

The defendants object to the magistrate judge's decision to grant in part the FBI agents' motion to stay discovery until the court resolves defendants' motions to dismiss. (ECF No. 94). Because the court will resolve all pending motions to dismiss with this order, the defendants' objection is moot.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the United States' motion to dismiss (ECF No. 39) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the FBI agents' motion to dismiss (ECF No. 55) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that Arik and Arik Ventures' motion to dismiss (ECF No. 54) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that Bolton's motion to dismiss (ECF No. 56) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ODERED that the defendants' objection to Magistrate Judge Cam Ferenbach's order (ECF No. 94) be, and the same hereby is, DENIED as moot.

DATED January 7, 2019.

_____
UNITED STATES DISTRICT JUDGE