UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| SCOTT FRIEDMAN, | | Case No. 2:18-CV-857 JCM (VCF) |
| | Plaintiff(s), | ORDER |
| v. | | |
| UNITED STATES OF AMERICA, et al., | | |
| | Defendant(s). | |

Presently before the court is the United States of America's ("the government") objection to Magistrate Judge Ferenbach's order granting Scott Friedman's ("Friedman") motion for leave to file an amended complaint. (ECF No. 195). Friedman filed a response (ECF No. 202), and the objection is now ripe.

Also before the court is defendant Julie Bolton's ("Bolton") motion to dismiss. (ECF No. 197). Friedman filed a response (ECF No. 203), to which Bolton replied (ECF No. 220).

Also before the court is the government's motion to dismiss. (ECF No. 199). Friedman filed a response (ECF No. 225), to which the government replied (ECF No. 230).

Also before the court is defendants Las Vegas Metropolitan Police Department ("LVMPD"), Joe LePore ("LePore"), and Darren Heiner's ("Heiner") (collectively "the LVMPD defendants")[1] motion to dismiss. (ECF No. 201). Friedman filed a response (ECF No. 227), to which the LVMPD defendants replied (ECF No. 232).

Also before the court is the government's motion for summary judgment. (ECF No. 234). The government filed a notice of failure to file response (ECF No. 257), and Friedman then filed

---

[1] The parties stipulated to dismiss defendant Jason Hahn, who would otherwise be an LVMPD defendant, from this action with prejudice. (ECF Nos. 296; 300).

**James C. Mahan**
**U.S. District Judge**

an untimely response (ECF No. 262), to which the government replied (ECF No. 268). Friedman then filed a supplemental response (ECF No. 299) and an errata thereto (ECF No. 301).

Also before the court is the government's motion to strike Friedman's supplemental response and errata. (ECF No. 302). Friendman filed a response (ECF No. 303), to which the government replied (ECF No. 306).

Also before the court is the LVMPD defendants' motion for summary judgment. (ECF No. 294). Friedman filed a response (ECF No. 305), to which the LVMPD defendants replied (ECF No. 314).

Also before the court is Magistrate Judge Ferenbach's report and recommendation ("R&R") recommending that any and all claims against defendants Tali Arik and Arik Ventures be dismissed in light of their settlement with Friedman. (ECF No. 320). No party has objected, and the time to do so has passed.

**I.    Background**

The instant action arises from a now-dismissed criminal proceeding against Friedman in which he was indicted for conspiracy to commit wire fraud and wire fraud. Friedman was indicted on charges that related to a fraudulent scheme regarding a purported land transaction in California, wherein nonparty Martin McClain defrauded defendant Arik out of hundreds of thousands of dollars. (ECF No. 193 at 14–15).

Friedman alleges that he "had nothing to do with Arik's California land investment, nor did he know anything about it." *Id.* at 14. Instead, Friedman lent Arik money to purchase, repair, and remodel the "Bannie Property" in an unrelated transaction. *Id.* at 13. Meanwhile, nonparty Michael Panik lent Arik money regarding the fraudulent California land deal. *Id.* at 11.

Arik—who had supposedly gambled away the money Panik lent him—was reportedly scared that Panik would "make a scene" at his workplace to collect on the loan, so he requested that Friedman help him repay Panik. *Id.* at 11–12. Arik wanted to wire the money he owed to Panik to Friedman, who would then repay Panik. *Id.* Friedman agreed under the belief that Arik would not repay the money owed to him unless he first helped Arik repay Panik. *Id.*

**James C. Mahan**
**U.S. District Judge**

Arik later contacted various law enforcement agencies, implicating Friedman in the California land deal. *Id.* at 14–16. Arik claimed that the loan he received from Friedman pertained to the California land deal rather than the Bannie Property. *Id.* At that time, the United States attorney's office declined to take any action regarding Arik's complaints to the FBI. *Id.*

Arik then sued Friedman and the LVMPD in August 2011, further implicating Friedman in the California land deal. *Id.* at 16–26. Friedman alleges that Arik's complaint in the civil case was replete with false allegations against him. *Id.* Arik made further false allegations against Friedman in December 2011, when he "drafted and disseminated letters" to various law enforcement agencies and government officials regarding Friedman's alleged involvement in the land deal. *Id.* at 26–29.

The civil lawsuit and subsequent letters caused the LVMPD to investigate Friedman's involvement in the land deal. *Id.* LVMPD officers met with Arik and his girlfriend, codefendant Bolton, in January 2012, to discuss the land deal and Arik's allegations against Friedman. *Id.* at 30–32. LVMPD investigated the land deal until the FBI took over the investigation in 2012. *Id.* at 32. Arik dismissed his civil lawsuit in August 2012. *Id.*

The FBI investigated Friedman's involvement from 2012 until 2014, at which time the United States attorney presented the case to a grand jury. *Id.* at 32–36. Friedman alleges that Special Agent Matthew Zito gave perjurious testimony to the grand jury in order to secure the indictment. *Id.* at 36–40. As a result of the indictment, Friedman was arrested. *Id.* at 40–41.

Friedman alleges that LVMPD, the FBI, and the officers and agents thereof received a written statement authored by Arik that allegedly proved Friedman's innocence. *See generally id.*; (*see also* ECF Nos. 17–24 ("exhibit H" to Friedman's complaint)). And, to be sure, the FBI forwarded that document along to the United States attorney's office in September 2016, at which time the government moved to dismiss the criminal charges against Friedman. (ECF No. 193 at 42–44). The United States attorney's office indicated that LVMPD "located in their records a box that contained material that had never been obtained by the United States attorney's office," including Arik's written statement. *Id.* at 43.

**James C. Mahan**
**U.S. District Judge**

- 3 -

Friedman believes that LVMPD and the FBI received a copy of Arik's written statement in 2010. *Id.* Thus, by Friedman's estimation, LVMPD and the FBI both instituted and pursued the criminal charges against him despite knowing—due to Arik's written statement—that he was innocent. *See generally id.* The FBI argues that it was not in possession of Arik's written statement prior to September 2016. (*See generally* ECF No. 234). LVMPD similarly denies receiving Arik's written statement or withholding it from the FBI. (*See generally* ECF No. 294).

Friedman filed his prolix complaint on May 11, 2018, asserting a variety of claims against the United States, LVMPD, various FBI agents and LVMPD officers, Arik and his company, and Bolton. (ECF No. 1). The court granted the government's motion to dismiss in part and then granted the government's motion for judgment on the pleadings, thus dismissing all claims against the government and the individual FBI agents. (ECF Nos. 121; 167).

On September 6, 2019, Friedman filed his first amended complaint over defendants' objection. (ECF Nos. 193 (complaint); 195 (objection)). As relevant here, the amended complaint "revive[d] claims against the United States for malicious prosecution, civil conspiracy, false imprisonment, unlawful arrest, intentional infliction of emotional distress, and aiding and abetting based on the conduct of the three federal agents." (ECF No. 175 at 2). The amended complaint also asserts eight claims against the LVMPD defendants: malicious prosecution, malicious prosecution conspiracy, unlawful arrest/imprisonment, civil conspiracy, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress ("NIED"), aiding and abetting, and municipal liability. (ECF Nos. 193).

The government and the LVMPD defendants move to dismiss (ECF Nos. 199; 201) and for summary judgment on (ECF Nos. 234; 294) the first amended complaint.

**II.     Legal Standard**

   *A. Review of a magistrate judge's order*

A district judge may affirm, reverse, or modify, in whole or in part, a magistrate judge's order, as well as remand with instructions. LR IB 3-1(b).

Magistrate judges are authorized to resolve pretrial matters subject to the district judge's review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); *see also*

**James C. Mahan**
**U.S. District Judge**

- 4 -

Fed. R. Civ. P. 72(a); LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law."). The "clearly erroneous" standard applies to a magistrate judge's factual findings, whereas the "contrary to law" standard applies to a magistrate judge's legal conclusions. *See, e.g.*, *Grimes v. Cty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991).

A magistrate judge's finding is "clearly erroneous" if the district judge has a "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "[R]eview under the 'clearly erroneous' standard is significantly deferential." *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993).

"An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Desage*, 2017 WL 77415, at *3, --- F. Supp. 3d ----, ---- (D. Nev. Jan. 9, 2017) (quotation omitted); *see also Grimes*, 951 F.2d at 241 (finding that under the contrary to law standard, the district judge reviews the magistrate judge's legal conclusions *de novo*).

### B. Report and recommendation

A party may file specific written objections to the findings and recommendations of a United States magistrate judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); LR IB 3-2. Where a party timely objects to a magistrate judge's report and recommendation, the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* However, "a district court may not reject the factual findings of a magistrate judge on a motion to suppress without conducting a *de novo* evidentiary hearing." *United States v. Ridgway*, 300 F.3d 1153, 1155 (citing *United States v. Bergera*, 512 F.2d 391, 392–94 (9th Cir. 1975)).

Pursuant to Local Rule IB 3-2(a), a party may object to the report and recommendation of a magistrate judge within fourteen (14) days from the date of service of the findings and

James C. Mahan
U.S. District Judge

- 5 -

recommendations. Similarly, Local Rule 7-2 provides that a party must file an opposition to a motion within fourteen (14) days after service thereof.

### C. *Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by evidence. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

#### A. *The government's objection to Friedman's amended complaint and motion to strike*

As an initial matter, the court finds that Judge Ferenbach properly applied Ninth Circuit authority when determining whether to allow Friedman to file his first amended complaint. (ECF No. 191). The court also notes the strong public policy in favor of deciding cases on their merits. *See, e.g., In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) ("We have often said that the public policy favoring disposition of cases on their merits strongly counsels against dismissal.").

The parties have treated the first amended complaint as operative and have fully briefed various motions to dismiss and for summary judgment accordingly. The court will also consider

James C. Mahan
U.S. District Judge

- 7 -

Friedman's filings to decide this case on its merits. Accordingly, the court denies the government's objection (ECF No. 195) and affirms Judge Ferenbach's order (ECF No. 191). Consequently, the court denies the government's motion to strike. (ECF No. 302).

### B. R&R

No party objected to Judge Ferenbach's R&R, and the time to do so has passed. When a party fails to object, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made).

Nevertheless, this court conducted a *de novo* review to determine whether to adopt the recommendation of the magistrate judge. Upon reviewing the recommendation and attendant circumstances, this court finds good cause appears to adopt the magistrate judge's findings in full. Thus, the court dismisses any and all claims against defendants Tali Arik and Arik Ventures in light of their settlement with Friedman.[2]

### C. The government's motion for summary judgment

"[P]robable cause is an absolute defense to malicious prosecution." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009); *see also Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (finding no liability for false imprisonment or false arrest when police had probable cause to arrest plaintiff). The United States Supreme Court has "often told litigants" that "[p]robable cause . . . is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (quoting *Florida v. Harris,* 568 U.S. 237, 244 (2013) (quoting in turn *Illinois v. Gates,* 462 U.S. 213, 231 (1983))) (quotation marks and brackets omitted).

---

[2] Friedman and Bolton also settled this matter in good faith. (ECF Nos. 284; 304). The court denies Bolton's motion to dismiss (ECF No. 197) as moot.

James C. Mahan
U.S. District Judge

- 8 -

A finding of probable cause by a judge, magistrate judge, or grand jury "constitutes *prima facie*—but not *conclusive*—evidence of probable cause." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004); *see also Hobbs v. City of Long Beach*, 534 F. App'x 648, 649 (9th Cir. 2013) ("A grand jury indictment is prima facie evidence of probable cause."). "Among the ways that a plaintiff can rebut a *prima facie* finding of probable cause is by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Awabdy*, 368 F.3d at 1067.

Friedman was indicted by a grand jury. Thus, there is a prima facie finding of probable cause, which is an absolute defense to Friedman's malicious prosecution claim. As a result, every one of Friedman's claims requires him to rebut the prima facie finding of probable cause, which he can do only by showing that the indictment was procured by fraud, perjury, or fabricated evidence.

Friedman argues that "[i]f in fact the FBI was in possession of Arik's [written statement] prior to Special Agent Zito testifying to the [g]rand [j]ury . . . then Friedman should prevail on all of his FTCA claims . . . ." (ECF No. 299 at 9). Friedman summarily alleges that "Arik's [written statement] and supporting documentation was provided to FBI SA Tierney and others unknown within the FBI" and that "Arik provided [his written statement] to the LVMPD and others." *Id.* at 15 (capitalization omitted). Friedman believes that "SA Tierney, and upon information and belief SA Zito and SA Larson, were aware of the FBI Complaint in 2010." *Id.* at 34.

Conversely, the government contends that the written statement "was never transmitted, received, held, or otherwise possessed by anyone at [the] FBI until late September 2016, when it was discovered by Metro (and thereafter turned over to the FBI) immediately before the start of the federal criminal trial against Friedman." (ECF No. 234 at 6 n.1). Special Agent Tierney avers that he did not receive any documents from Arik during their meeting in May 2010. (ECF No. 235 at 2). Special Agents Laron and Zito both claim that they did not see Arik's written statement until September 2016, at which time it was forwarded to the United States attorney's office. (ECF Nos. 236; 237).

Friedman himself concedes that "[n]o witness, including Arik, has testified as to when the [written statement] prepared by Arik was provided to anyone." *Id.* at 7. Friedman concedes that the United States attorney's office did not receive the written statement until just prior to trial, at which time the government dismissed the criminal proceeding. (ECF No. 193 at 43).

Friedman has not shown by competent evidence that the FBI had Arik's written statement prior to initiating the criminal proceeding against him. Friedman's allegations regarding the FBI's possession of Arik's written statement are directly contradicted by witness testimony—not only the FBI special agents, but Arik himself. Thus, Friedman has presented no evidence that would allow a jury to find that the FBI had Arik's written statement. Without such evidence, Friedman cannot overcome the prima facie showing of probable cause established by the grand jury's indictment. Accordingly, the court grants the government's motion.

### D. The LVMPD defendants' motion for summary judgment

As an initial matter, Friedman "agrees to dismiss the . . . *Monell* claim against LVMPD and the NIED and IIED claims against LePore and Heiner." (ECF No. 305 at 2). Thus, the court limits its analysis to the remaining causes of action against the LVMPD defendants: malicious prosecution under § 1983, malicious prosecution conspiracy, unlawful arrest/imprisonment, civil conspiracy, and aiding and abetting.

Turning to the remaining claims, Friedman has the burden to prove "(1) a lack of probable cause to commence the prior action; (2) malice; (3) favorable termination of the prior action; and (4) damages." *Lester v. Buchanen*, 929 P.2d 910, 912 (Nev. 1996). Notably, the first element requires that LVMPD lacked probable cause and that the LVMPD defendants "commenced" the criminal action. *Id.* at 912–13. Friedman cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by evidence. *See Taylor*, 880 F.2d at 1045. Instead, Friedman must produce competent evidence that supports his allegations and shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

Here, the LVMPD defendants realized that the alleged California land deal was outside of their jurisdiction, so "LePore reached out to the FBI sometime in early 2012 regarding the investigation." (ECF No. 294 at 5). The LVMPD defendants had no hand in the investigation

James C. Mahan
U.S. District Judge

- 10 -

once the FBI took over. *Id.* at 6 ("At no point in time did LVMPD and the FBI work together to investigate [Friedman] or any other individual named in Dr. Arik's [c]omplaint."). Although LVMPD turned over what information it had, the FBI "wanted to start over with the investigation and would re-issue subpoenas for the financial records related to the investigation." *Id.*

The LVMPD defendants did not "actively participate" in the federal criminal case. The FBI independently investigated for over two years before Friedman was indicted. Friedman concedes that "the LVMPD did not conclude its investigation of [Friedman] and initiate charges against him." (ECF No. 305 at 13). To the contrary, Friedman argues that the FBI had access to Arik's written statement independent of the LVMPD defendants and nonetheless prosecuted him.

Accordingly, summary judgment is appropriate because Friedman has failed to establish an essential element of his malicious prosecution claim against the LVMPD defendants. Friedman's remaining claims necessarily fail because they all arise from his malicious prosecution claim.[3] The LVMPD defendants' motion is granted in full.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the government's objection (ECF No. 195) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the government's motion to strike (ECF No. 302) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the government's motion to dismiss (ECF No. 199) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that the LVMPD defendants' motion to dismiss (ECF No. 201) be, and the same hereby is, DENIED as moot.

IT IS FURTHER ORDERED that Bolton's motion to dismiss (ECF No. 197) be, and the same hereby is, DENIED as moot.

---

[3] To the extent it does not arise from the malicious prosecution claim, Friedman's unlawful arrest/imprisonment claim against the LVMPD defendants' nevertheless fails because it was the federal government, not LVMPD, that arrested Friedman.

**James C. Mahan**
**U.S. District Judge**

- 11 -

IT IS FURTHER ORDERED that, in light of Bolton and Friedman's settlement (ECF Nos. 284; 304), Bolton is DISMISSED as a defendant in this action.

IT IS FURTHER ORDERED that the government's motion for summary judgment (ECF No. 234) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the LVMPD defendants' motion for summary judgment (ECF No. 294) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT Judge Ferenbach's R&R (ECF No. 320) be, and the same hereby is, ADOPTED in full.

IT IS FURTHER ORDERED that defendants Tali Arik and Arik Ventures be, and the same hereby are, DISMISSED from this action.

The clerk is instructed to enter judgment in favor of the government and the LVMPD defendants and against Friedman and close the case accordingly.

DATED June 5, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**